UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| DERRICK PERSON,<br><br>    Plaintiff<br><br>    v.<br><br>PATRICIA COYNE-FAGUE, *alias,*<br>*individually and in her official capacity*<br>*as director of the Rhode Island*<br>*Department of Corrections,* SILKA<br>DISLA;  AMELIA ELLING;<br>LORRAINE WARE; STATE OF<br>RHODE ISLAND, DEPARTMENT OF<br>CORRECTIONS; CORRECTIONAL<br>OFFICER DENISE; JAY PIEROTTI,<br>*individually and in his official capacity*<br>*as a correctional officer*; KAREN<br>TAVARES, *individually and in her*<br>*official capacity*; ALLISON<br>SZEWCZYK*, individually and in her*<br>*official capacity as a registered nurse*<br>*of the Department of Corrections*;<br>MIKAYLIN WILLIAMS, *individually*<br>*and in her official capacity as a*<br>*registered nurse of the Department of*<br>*Corrections*; BRITTANY PLAISTED,<br>*individually and in her official capacity*<br>*as a registered nurse of the*<br>*Department of Corrections*; BRENDA<br>ABELLI, *individually and in her*<br>*official capacity*; STEVE FORTIN,<br>*individually and in his official capacity*;<br>DENISE DESJARDINS, *individually*<br>*and in her official capacity,*<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br><br>No. 22-cv-43-JJM-AEM |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 125. For the reasons stated below, the Court grants in part and denies in part Defendants' Motion for Summary Judgment.

## I.    BACKGROUND[1]

Plaintiff Derrick Person is incarcerated at the Medium Security Facility under the care and custody of Defendant State of Rhode Island Department of Corrections ("RIDOC"). ECF No. 78 at ¶ 1. On January 28, 2019, Mr. Person underwent hernia repair surgery at Rhode Island Hospital. ECF No. 129 at 4. Upon discharge and return, on January 29, Mr. Person awoke to swelling and pain in his genital area, which he assumed was a reaction to the surgery. ECF No. 131 at 6. He then heard an announcement over the facility's loudspeaker that there would be no sick call that day. *Id.* Despite an increase in pain and swelling, on January 30 the loudspeakers echoed yesterday's news: no sick call. *See id.* at 7. Nonetheless, Mr. Person went to the dispensary seeking evaluation. *Id.* at 8. Defendant Ware and/or Defendant Szewczyk, the nurses staffing the dispensary, responded, "[t]here is no sick call today so there is nothing that can be done for you. Try coming back in the evening." *Id.*

---

[1] The facts listed are presented in the light most favorable to the non-moving party – Plaintiff Derrick Person. *See, e.g.*, *Rhode Island Truck Ctr., LLC v. Daimler Trucks N. Am., LLC*, No. 25-1781, 2026 WL 2067925, at *3 (1st Cir. July 17, 2026) (The court must examine "the record in the light most favorable to the non-moving party.") (citing *Nightingale v. Nat'l Grid USA Serv. Co.*, 107 F.4th 1, 5 (1st Cir. 2024)).

Mr. Person returned in the evening and again made his case, this time to Defendant Smith and Defendant Desjardins. *Id.* at 9. Defendants told Mr. Person that nothing could be done for him, as there was no sick call. *Id.*

On January 31, Mr. Person awoke to yet another increase in pain and swelling, and again to an announcement that there would be no sick call. *Id.* at 12. Mr. Person went to the dispensary again for an evaluation and complained about his worsening condition to Defendant Pierotti. *Id.* Defendants failed to send Mr. Person to the Emergency Department at Rhode Island Hospital and failed to provide any medical care or evaluation. *Id.*

On February 1, Mr. Person awoke in extreme pain and with very swollen testicles. *Id.* at 15. Sick call was again canceled based on information provided by Defendant RIDOC and Defendant Abelli. *See id.* Mr. Person returned to the dispensary medical line, where he told Defendant Williams that he was in extreme pain. *Id.* at 16. Defendant Ware or Williams told Mr. Person there was nothing she could do. *Id.* at 17.

On February 2, there was again no sick call. By this point, Mr. Person was in extreme pain. *Id.* at ¶ 87. Defendant Elling finally agreed to evaluate Mr. Person despite the lack of sick call. *Id.* at 19. At 9:00 a.m., immediately upon evaluation, Defendant Elling completed an Emergency Room Referral for an appointment "ASAP"—an option available to any RIDOC medical staff throughout the preceding days of Mr. Person's complaints and Defendants' refusals to provide evaluation or treatment. *Id.* Upon his arrival at Rhode Island Hospital, urology preliminarily

diagnosed Mr. Person which testicular torsion.  ECF No. 78 at ¶ 94.  After an ultrasound, doctors recommended surgery, advising Mr. Person that surgery would likely come at the cost of his right testicle.  *Id.* at ¶¶ 103-107.  The emergency room doctor told Mr. Person: "You are going to lose your right testicle today.  There is most likely no way to save it.  It has possibly been dead for up to two days.  If you had gotten here sooner, there is a possibility that I could have saved it."  *Id.* at ¶ 107. Mr. Person underwent surgery and ultimately lost his right testicle.  *Id.* at ¶ 110.

Mr. Person filed this case, bringing the following claims: Count I, Violation of the Right of Freedom from Cruel and Unusual Punishment under 42 U.S.C. § 1983; Count II, Violation of the Right of Freedom from Cruel and Unusual Punishment under Article 1, § 8 of the Rhode Island Constitution; Count III, Negligence; and Count IV, Medical Malpractice. Defendants now move for summary judgment and seek dismissal of all of Mr. Person's claims.

## II.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure governs whether a party is entitled to summary judgment.  *See* Fed. R. Civ. P. 56. Specifically, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* "[M]ere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  Thus, the issue must be both genuine

4

and material. *See id.* "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . '[M]aterial' means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (citations omitted) (internal quotation marks omitted). When deciding whether the Court should grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 26 (1st Cir. 1995).

More particularly, Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court decides this latter element of the summary judgment standard by evaluating "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 252 (cleaned up).

III.  DISCUSSION

### A. Conceded Claims

Mr. Person concedes to the dismissal of Count I (8th Amendment claim) as to the State Defendants in their official capacities, of Count II (R.I. Constitution claim) as to all Defendants, and of Count IV (medical malpractice) as to all Defendants. ECF

No. 137 at 2.  The Court therefore GRANTS summary judgment to Defendants on those Counts.

### B. Count 1: Violation of the Right of Freedom from Cruel and Unusual Punishment under 42 U.S.C. § 1983

Mr. Person argues that Defendants, in their individual capacities, violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to adequately respond to his post-operative pain and swelling.  The Eighth Amendment ensures "[p]risoners retain the essence of human dignity inherent in all persons." *Brown v. Plata*, 563 U.S. 493, 510 (2011).  To establish an Eighth Amendment claim based on inadequate medical care under 42 U.S.C. § 1983, "a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need."  *Kosilek v. Spencer*, 774 4.3d 63, 82 (1st Cir. 2014).

Assuming Mr. Person's post-operative pain constitutes an objectively serious medical need, Mr. Person's claim fails on the subjective prong as a matter of law. "Deliberate indifference requires a culpable state of mind more than that of mere negligence, but less than intentional conduct." *Parente v. Wall*, 708 F. Supp. 3d 192, 201 (D.R.I. 2023) (citing *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006); *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991) (holding that "deliberate indifference" require a "subjective standard of recklessness")).  Here, Mr. Person fails to present evidence that Defendants knew of and disregarded an excessive risk to his health or safety. *See Ferranti v. Moran*, 618 F.2d 888, 891 (1st

Cir. 1980) ("Such a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation."). In other words, because Mr. Person has not produced evidence that Defendants subjectively recognized a substantial risk of serious harm and chose to ignore it, no reasonable jury could find that Defendants acted with the requisite culpable state of mind.

Mr. Person also alleges that Defendants Coyne-Fague, Abelli, and Fortin are liable for his Eighth Amendment claims under the doctrine of supervisory liability. "A claim for supervisory liability under section 1983 has two elements: first, the plaintiff must show that one of the supervisor's subordinate abridges the plaintiff's constitutional rights, and second, the plaintiff must show that the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Brown v. Dep't of Corr.*, C.A. No. 21-cv-111117-ADB, 2026 WL 323309, at *8 (D. Mass. Feb. 6, 2026) (cleaned up). Because Mr. Person has not produced evidence supporting a constitutional violation by the supervisors' subordinates, his evidence for a supervisory liability claim is likewise deficient. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment at to Count I.

## C. Count III: Negligence[2]

To maintain a cause of action for negligence under Rhode Island law, Mr. Person must establish four elements: (1) a legally cognizable duty owed by defendant to plaintiff; (2) breach of that duty; (3) that the conduct proximately caused the injury; and (4) actual loss or damage. *Medeiros v. Sitrin*, 984 A.2d 620, 625 (R.I. 2009). The threshold question is the applicable duty of care and—on summary judgment—the court draws all reasonable inferences in favor of the non-moving party. *Loffredo v. Shapiro*, 274 A.3d 782, 790 (2022). The court addresses each element in turn.

Under Rhode Island law, a plaintiff alleging professional negligence must ordinarily establish the applicable standard of care through expert testimony— unless the alleged lapse is "so evident as to be obvious to a lay person," in which case expert testimony is unnecessary. *Foley v. St. Joseph Health Servs. of Rhode Island*, 899 A.2d 1271, 1281 (R.I. 2006). Defendants argue Mr. Person has not carried his burden. ECF No. 137 at 9 ("Plaintiff fundamentally misunderstands the concept of 'standard of care,' fails to comprehend that it has a legal definition, and has utterly failed to establish it according to the requirements under the law."). Mr. Person has,

---

[2] A federal court exercising jurisdiction over an asserted federal-question claim must also exercise supplemental jurisdiction over asserted state-law claims that arise from the same nucleus of operative facts. See 28 U.S.C. § 1367(a). Thus, this Court has jurisdiction over the Ms. DaCosta's pendent state-law claim. *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996). In deciding whether to retain jurisdiction on such an occasion, the trial court must consider concerns of comity, judicial economy, convenience, fairness, and the like. *Id.* at 257 (citing *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995)). Here, this case is four years old and is through the dispositive motions stage. It would waste judicial resources for this Court not to retain jurisdiction.

however, come forward with the opinion of Dr. Davi, who defines the standard of care as follows: "All nurses [are] expected to respond to an inmate-patient who complain[s] about increased testicular pain and swelling, post inguinal hernia repair, by evaluating the surgical site, taking a history, and determining whether the inmate-patient need[s] to be referred to a physician for further evaluation." ECF No. 130 at 48. Dr. Davi further opines that "the abject failure to provide basic medical care, to keep even minimally reliable medical records, and the refusal by Defendant Nurses to even evaluate an inmate complaining of testicular pain and swelling post-inguinal hernia repair is 'so evident as to be obvious to a lay person.'" ECF No. 130 at 48. Viewing this standard in the light most favorable to Mr. Person for the purposes of this motion, the Court finds that a genuine dispute of fact exists regarding whether Defendants breached a duty of care to perform these baseline evaluative steps upon notification of his symptoms.

Moreover, whether that duty was breached is genuinely disputed. "Dr. Davi opine[s] that any medical professional to whom Mr. Person complained about postoperative testicular pain and swelling, including nurses, breached the standard of care by either not evaluating his condition or not ensuring that he was evaluated by another medical professional." ECF No. 130 at 49-50.

Separately, the parties dispute the legal significance of the sick-call cancellations that recurred during Mr. Person's five days of complaints. Mr. Person contends that an inmate presenting a medical emergency must be seen irrespective of whether sick call is formally held that day, ECF No. 132 at 8, and that the

9

alternative channels Defendants point to, such as written medical request slips, were illusory in practice, since being seen "entirely depend[ed] on whether the [correctional officer] is willing to call down to the Dispensary," and officers "sometimes … just send[] the inmate or do[] nothing." *Id.* at 10. Defendants respond that the availability of the slip process means no duty was breached regardless of the sick-call cancellations.

The parties further dispute whether discrete encounters satisfied the standard: for example, whether Mr. Person's having been briefly seen by Nurse Abelli discharged Defendants' obligations, or whether that encounter was, as Mr. Person contends, medically meaningless. *Id.* at 19. The parties even dispute the threshold factual question of whether Mr. Person voiced complaints to certain named Defendants at all; Mr. Person has offered his own testimony and that of two corroborating witnesses on this point, which is itself competent evidence sufficient to create a jury question. *Id.* at 22. Because reasonable jurors, crediting one account of these events over the other, could resolve a breach either way, this element cannot be decided as a matter of law.

Mr. Person alleges that "*any time*, including during sick call, an inmate expressing a medical emergency must be seen." ECF No. 132 at 8. Defendants allege that regardless of sick call, inmates still have other methods of being seen for a medical complaint or issue, but Mr. Person contends that "[a]lthough these are *possible* avenues for seeking medical care, they entirely depend on whether the CO is willing to call down to the Dispensary and sometimes they will just send the inmate

10

or do nothing." *Id.* at 10.  Mr. Person further alleges that even if there are other methods of receiving care, "it is absolutely irrelevant whether there are *other* ways for inmates to seek medical care.  When an inmate complains directly to multiple Cos and nurses about an urgent medical need, he *must* be seen." *Id.*  Defendants argue that medical problems can be written on medical slips and thus, Defendants breached no duty of care.

Moreover, the parties dispute additional facts surrounding the breach, for instance, whether Mr. Person being seen by Nurse Abelli sufficiently meets the standard of care. *Id.* at 19. ("Admitted the patient was seen. Dispute the implication that this means anything for Plaintiff's care.").  And the parties further dispute whether Mr. Person made any complaints to Defendants: Defendants say there is no evidence that Mr. Person made any complaints to any named Defendant; but, according to Mr. Person, "[t]his statement is shockingly argumentative and non-factual." *Id.* at 22.  "Plaintiff's testimony is of course 'evidence,' as is that of his uncle, Clarence, and son, Dante." *Id.*

The parties also disagree about the issue of causation.  Specifically, the question of salvageability is in dispute.  According to the Defendants, Mr. Person "has not established, via competent expert testimony, when his testicle had any chance of salvageability."  ECF No. 137 at 11.  "Dr. Davi cannot pinpoint with any reasonable degree of medical certainty as to when [Mr. Person's] testicle was salvageable." *Id.* at 11-12.  Dr. Davi testified to a reasonable degree of medical certainty that Mr. Person's testicle would have been salvageable on the first day that he complained of

11

severe pain, and possibly on the second.  ECF. No. 130 at 50.  (citing Pl. SAUF ¶ 120) ("It is more probable than not that had Mr. Derrick Person been evaluated for his increased scrotal pain and swelling at its onset on January 30, 2019 (probably the onset of the ischemia) within 24-48 hours, he would not have suffered the loss of his testicle.").

Mr. Person further contends that under the lost chance doctrine recognized by the Rhode Island Supreme Court, "the plaintiff need only establish that '[the] defendant's negligence was a proximate cause of the lost chance.'"  ECF No. 130 at 52 (quoting *Malinou v. Mirian Hosp.*, 24 A.3d 497, 512 (R.I. 2011)) (cleaned up).  Further, the causal connection refers not only to his ultimate injury—the loss of a testicle— but also to the unnecessary pain and suffering, to which Mr. Person was subjected. ECF No. 130 at 40.  Because genuine disputes of material fact exist under both the traditional and loss-of-chance causation theories, this element likewise cannot be resolved as a matter of law.

Because genuine disputes of material fact preclude judgment as a matter of law on both breach and causation, Defendants motion for summary judgment as to Count III is DENIED.

## IV.    CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  ECF No. 125.  Count III alleging negligence survives, all other Counts are dismissed

12

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*


_____

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

August 7, 2026